# O'Neil *versus* Hamilton.

*Holder of Legal Title, when a Trustee for the Holder of the Equitable Title.—Position of Purchaser, with knowledge of Equitable Title.—Equity Jurisdiction of District Court of Allegheny County.*

1. The District Court of Allegheny county has jurisdiction of a bill in equity for an injunction on the part of a complainant in possession under an equitable title, filed against the holder of the legal title, for the purpose of preventing a sale or conveyance, of quieting possession, declaring them trustees in equity, and of obtaining a conveyance.

2. One by will devised to one of his daughters a tract of land held under contract of purchase and payment of purchase-money, with other land held under settlement and improvement, but unpatented: after her marriage, an action was brought by herself and her husband on the contract, and after verdict a deed was made to him in fee simple : he also procured a patent for the residue of the land in his own name: after a separation between him and his wife, he mortgaged and then sold the land to one of her nephews, when she filed her bill against them, and an amended bill against her nephew after her husband's death, to enjoin them from selling or conveying the land,—to quiet her in the possession which she had held from the time of her father's death,—to rescind the conveyance, to declare them her trustees, and to obtain a decree for a conveyance to her and her heirs. *Held,* That as the husband had no title except by virtue of his marital rights, he could not by any act of his affect the title of his wife: and that the nephew being a purchaser with knowledge of her rights was in the same position as the husband, and was therefore but a trustee in equity for her, and was bound to make conveyance to her.

APPEAL from the District Court of *Allegheny county.*

This was an appeal by John O'Neil, who survived Robert Hamilton, from the decree of the court below, in a proceeding in equity, on a bill filed by Margaret Hamilton, who was at the time the wife of Robert Hamilton, but who died during the pendency of the suit.

The bill prayed for an injunction to restrain respondents from selling and conveying certain real estate there mentioned—that complainant might be quieted in the possession of the land—that the conveyances made to the appellant might be rescinded and overruled, and that respondents might be declared trustees thereof for complainant, and compelled to convey and assure the same to complainant.

An answer having been filed, the case was referred to an examiner, on whose report a decree was made in accordance with the prayer of complainant, from which this appeal was taken.

All the material facts of the case will be found in the opinion of this court.

The case was argued at great length by *Woods* and *Loomis*, for appellant, and by *Williams* and *Hamilton*, for appellee.

[O'Neil *v.* Hamilton.]

The opinion of the court was delivered, January 8th 1863, by

READ, J.—We have considered with great attention the very able argument of the appellant's counsel, and have given their full weight to their objections to the decision of the court below, which in itself appears not inequitable, unless their client is a *bonâ fide* purchaser, for a valuable consideration, without notice. His title is derived from Robert Hamilton, and the first question, therefore is, what was the title of Robert Hamilton? This question is best answered by a statement of the facts as they appear from the master's report, and the evidence returned by him.

A tract of land of three hundred acres was occupied by John Wallace, who was probably the first settler on it; after him came a man by the name of Rutherford, and after him Isaac Robinson came into possession of it, and on the 7th April 1789 made a deed, in fee simple, for it to Samuel Robinson, the father of the plaintiff, who occupied it, claiming it as his own up to his death, in 1797. Samuel Robinson, in his lifetime, purchased from Joseph Irwin twenty-four acres by a parol contract. Samuel Robinson, by his will dated 2d March 1796, duly proved and recorded in Will Book No. 1, p. 36, appointed Joseph Irwin and Robert Thompson sole executors of all his real and personal estate, to direct and dispose of the same to the use of his family in the manner therein set forth. After certain provisions for his wife, he divides his land amongst his three daughters, Jeannette, Sallie, and Peggy, the plaintiff, and after describing the two parts given to the two first named, he then says: "Thirdly, my youngest daughter, Peggy's lot, is to contain the residue of my place, which is one hundred and eight acres, and allowance, whereon the houses stand, and adjoining Daniel McDermott's land and Edward Pettigrew's land." The master finds that the twenty-four acres were included in Peggy's share, and there appears to be no doubt of the fact.

After the death of Samuel Robinson, his widow and three daughters lived together on the farm until the marriage of Jeannette and Sallie, on the happening of which they went to live on their respective parts of the farm. The widow continued to reside on the part devised to her youngest daughter, the plaintiff, until her death in 1829, receiving an annual sum of $16 from each of her other daughters. About the year 1811, Robert Hamilton having come from Ireland a short time before, a widower, with several children, married Peggy, the plaintiff, and went to live on the land in dispute, with his wife and mother-in-law.

Shortly after their marriage, Robert Hamilton and wife commenced a suit in the Common Pleas of Allegheny county, to August Term 1812, against Joseph Irwin. The style of the action was Robert Hamilton and Margaret Hamilton, late Margaret

[O'Neil *v.* Hamilton.]

Robinson, daughter and devisee of Samuel Robinson. The declaration set out a contract made about the 1st March 1796, between the said Samuel Robinson in his lifetime, and Joseph Irwin, by which the latter agreed to sell to the former the said twenty-four acres for a certain sum, which was alleged to have been paid at the bringing of this suit, and that the said Samuel Robinson, by his last will, bearing date 2d March 1796, did devise the said piece of land, among other things, to his said daughter, Margaret Robinson, who was, at the bringing of the said suit, lawfully married to the said Robert Hamilton. This case was tried on the 9th January 1816, and resulted in a verdict for plaintiffs for $800 damages, to be released on a title to be made within six months, and costs of judgment. The connection of Robert Hamilton with this suit and its conduct is expressly found by the master.

This suit, and the other facts above stated, establish beyond all controversy, 1. That Hamilton could have no title to any part of the land prior to his arrival in the United States from Ireland, in 1811. 2. That he knew that Samuel Robinson owned the whole of this land, and that he knew of his will, under which his wife was a devisee of one-third of the tract, including these twenty-four acres. 3. That when he married the plaintiff he came into possession under her, and by virtue merely of his marital rights. 4. That no act of his could in any manner affect the title of his wife.

On the 29th May 1816, Joseph Irwin made a deed for these twenty-four acres and fifteen perches, to Robert Hamilton, in fee simple, giving him the legal whilst the equitable title was in his wife, in whom the fee simple vested, subject to the curtesy of her husband.

The case itself was carried to the Supreme Court, and is reported under the name of Irwin *v.* Hamilton, in 6 S. & R. 208, and was decided on the 28th September 1820. Tilghman, C. J. said: "The right of action for breach of the contract was in Robinson in his lifetime, and is now in his executors or administrators, in whose name a suit may be brought for the use of the plaintiffs. *Robinson* had power to devise the lands, the equitable estate of which was in him—but he could not by any means assign or transfer his right of action for a breach of the contract, so as to vest in the assignee a legal right sufficient to support an action in his own name." The judgment was reversed, and the whole, after the conveyance of the land, was merely a question of costs.

It is clear, then, that the only title to any part of the land of Samuel Robinson devised to the plaintiff which her husband had, was by virtue of his marital rights, and so Robert Hamilton solemnly declared under oath, upon his application for the benefit

[O'Neil *v.* Hamilton.]

of the insolvent laws, on the 4th February 1822. He was discharged on the 12th August 1822, and after that period all his title was vested in his assignee.

In the face of all this evidence Robert Hamilton applied for a warrant November 18th 1828, for seventy-five acres of land, including his improvements and actual settlement, situated in the township of Mifflin, and county of Allegheny. The warrant is dated January 22d 1829, and a survey was made on it by the deputy surveyor April 11th 1829, returned March 10th 1837, for ninety-three acres and thirty-three perches, and allowance, and a patent was issued for this land to Robert Hamilton on the same day.

It is also to be observed that the application, warrant, and survey were about the time of the death of the widow. It is clear that whatever was the motive which actuated Robert Hamilton in thus obtaining the title of the Commonwealth, it could enure only to the benefit of his wife, who was. the real owner of the fee.

There is, therefore, no difficulty in saying that Robert Hamilton acquired by these acts no other title to any part of this land than arose from his being the husband of the plaintiff. Is John O'Neil, the present appellant, in a better condition than his grantor?

In the eightieth year of his age, Robert Hamilton, by deed dated 2d August 1856, for the nominal consideration of $10, conveyed to John O'Neil in fee the twenty-four acres and fifteen perches, and also twenty acres of the land patented on the 10th March 1837, the actual value of the whole being $6000, reserving a right to occupy it during his natural life. On the 2d December 1856, Robert Hamilton gave John O'Neil a mortgage on the land patented on the 10th March 1837, containing ninety-three perches and fifteen perches, including the twenty acres conveyed by the deed of the 2d of August 1856, which mortgage was given to secure a debt for $1000, for which he also held Hamilton's bond. On the 24th May 1860, after he left home, and shortly before his death, Robert Hamilton conveyed to John O'Neil the whole ninety-three acres and thirty-three perches, and allowance, reserving thereout the twenty acres conveyed by the deed of the 2d August 1856, but ratifying that deed, and releasing the life estate he had reserved by that deed. Deducting the twenty acres, the value of the land thus conveyed was $7300.

The equivalent held by Hamilton for all these securities and conveyances was O'Neil's due bill for $1000, on which receipts for $1020.07 were endorsed, which was in the hands of their mutual adviser, and also an agreement of John O'Neil, not acknowledged or recorded, and also in the hands of their mutual attorney. By this agreement O'Neil binds himself to pay the

consideration $7300, as follows: First, in his own mortgage, then Robert Hamilton's expenses as long as he lived, and the balance was to be paid in instalments of $2000 a year, counting from the death of the plaintiff, *without interest*, as follows: First, to satisfy R. Hamilton's debts, including $500 to a Methodist church, and whatever was left to his nine children in equal parts.

It is found by the master, and the evidence supports the finding, that John O'Neil, prior to these transactions, had knowledge of his aunt's title, and of course of the entire invalidity of Robert Hamilton's title to any portion of this land. For property clearly worth between thirteen and fourteen thousand dollars, he gave or advanced, in various forms, only about $1000; and he was therefore, beyond all dispute, not a *bonâ fide* purchaser for a valuable consideration, and without notice, and therefore was exactly in the same position as Robert Hamilton, his grantor.

But it is objected that the forms of equity pleading and the rules of equity evidence prevent our looking at the naked truth of the case. Now the answer of Robert Hamilton, as to the pretended origin of his title, is contradicted by his own acts and declarations, and by the unquestioned evidence in the cause, which establishes the entire falsehood of his whole story. He knew the whole history of the title of Samuel Robinson, and of his will, and of the devise to his daughter, the wife of respondent. With this knowledge, the foundation of his alleged title is swept away, and all this part of his answer, the only really important one, is baseless, and the rest of it becomes immaterial. His acts and declarations were deliberate, and intended to effect an object beneficial to himself.

The answer of John O'Neil is open to the same criticism. It shows that he was not a *bonâ fide* purchaser for a valuable consideration; and the evidence in the cause establishes that he had full notice of the title of the plaintiff.

But we also think the bill and amended bill set forth a case calling for relief in a court of equity, independent of those allegations, which were not sustained by proof, and that the court below had jurisdiction of a case of this description. It comes within the equity powers expressly given to the court.

The court below considered Robert Hamilton as trustee of this property for his wife, the plaintiff, and that the present appellant succeeded to it, having purchased with a full knowledge of it. Their decree is based upon this state of facts, and this decree is affirmed at the costs of the appellant, with this variation, that the deed directed to be duly acknowledged and filed in the court below, shall be so filed within thirty days from the notice of this affirmance by this court.